**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THE J.M. SMUCKER COMPANY,<br><br>                  Plaintiff,<br><br>      v.<br><br>ANDROS FOODS USA, INC.,<br><br>                  Defendant. | Civil Case No.:  5:11-cv-1544<br><br>Judge:<br><br>**COMPLAINT FOR DECLARATORY**<br>**JUDGMENT AND**<br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, The J.M. Smucker Company, and for its Complaint against Defendant Andros Foods USA, Inc. states and alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is a civil action brought by The J.M. Smucker Company seeking a declaratory judgment that: (1) its use of the trade dress for its Smucker's Orchard's Finest preserves does not infringe any rights of Defendant and (2) the license agreement between The J.M. Smucker Company and S. A. Andros dated February 16, 1984 is valid and enforceable and that no provisions of that agreement jeopardize the valuable intellectual property belonging to The J.M. Smucker Company.

## PARTIES, JURISDICTION, AND VENUE

2.  At all relevant times, Plaintiff, The J.M. Smucker Company ("Smucker"), is and was a corporation organized and existing under the laws of the State of Ohio, with its principal place of business located at One Strawberry Lane, Orrville, Ohio 44667.

3.  Upon information and belief, Defendant, Andros Foods USA, Inc. ("Andros USA" or "Defendant"), is a corporation existing under the laws of the State of Delaware, located and doing business at 500 Mamaroneck Avenue, Suite 320, Harrison, New York 10528.

4.  Defendant manufactures, distributes, supplies, and/or sells goods into and/or from the State of Ohio.  Defendant derives a financial benefit from the commercial activities it conducts in the State of Ohio.

5.  Upon information and belief, Andros USA is a sublicensee to a license agreement between Smucker and S. A. Andros (the "Agreement") dated February 16, 1984 which states, on its face, that it shall be interpreted according to the laws of the State of Ohio and the trademark laws of the United States.

6.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 2201 because it arises, in part, pursuant to 15 U.S.C. §§ 1114 and 1125.

7.  Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1391(c).  Defendant is a corporation subject to personal jurisdiction in this District, a substantial part of the acts and omissions giving rise to the claims set forth below occurred in this District, and the intellectual property that is the subject of this action is located and maintained in this District.

2

## FACTUAL BACKGROUND

**A.**     **The Plaintiff**

8.      Smucker is a leading marketer and manufacturer of fruit spreads, peanut butter, shortening and oils, ice cream toppings, sweetened condensed milk, and health and natural foods and beverages in North America.

9.      For over 108 years, Smucker has been a family-run business headquartered in Orrville, Ohio.  The founder of Smucker, Jerome Monroe Smucker, sold his products from the back of a horse-drawn wagon with each jar of product bearing his hand-signed seal as his personal guarantee of quality.  Today, his great-grandsons, Mr. Richard K. Smucker and Mr. Timothy P. Smucker, the Co-Chief Executive Officers of Smucker, continue to guide the company by applying their great-grandfather's solid, Midwestern values.

10.      Smucker is the quintessential family-founded and consumer-oriented American manufacturing company.  In addition to its facilities in Orrville, Ohio, it also manufactures products across the United States in Toledo, Ohio; Cincinnati, Ohio; Lexington, Kentucky; Scottsville, Kentucky; New Orleans, Louisiana; Seneca, Missouri; Memphis, Tennessee; New Bethlehem, Pennsylvania; Chico, California; Havre de Grace, Maryland; Ripon, Wisconsin; and El Paso, Texas.

11.      To ensure that its founder's personal commitment to its customers is maintained, Smucker operates from its core "Basic Beliefs" of Quality, People, Ethics, Growth, and Independence.

12.      Smucker applies its high standard of quality to its products, its manufacturing methods, its marketing efforts, and its family of employees.  For more than a century, Smucker has operated on the principle that quality comes first.  Of particular importance to Smucker is maintaining the same strong, ethical values upon which the Company was founded.  Smucker

3

maintains the highest standards of business ethics with its customers, suppliers, employees, and shareholders, and within the communities in which it operates.

13. As a direct result of Smucker's century-long commitment to its core beliefs and its customers, the general public and its competitors have come to associate high quality goods with the SMUCKER'S trademark and the Smucker's family of related trademarks.

**B.    The *Smucker's* Trade Dress and The *Smucker's Orchard's Finest* Trade Dress**

14. The Smucker family of trademarks includes *Smucker's*®, *Jif*®, *Crisco*®, *Folgers*®, *Millstone*®, *Dunkin Donuts*® (by license), *Pillsbury*® (by license), *Eagle Brand*®, *R.W. Knudsen Family*®, *Hungry Jack*®, *White Lily*®, *Martha White*®, and *Uncrustables*®, among others.

15. Consistent with its overall basic beliefs and its commitment to providing customers with high quality goods, Smucker has manufactured and sold jams, jellies, and preserves under the SMUCKER'S trademark for well over 100 years.  Today, Smucker manufactures and sells over forty varieties of jams, jellies, and preserves.  Smucker's rights in the SMUCKER'S trademark are embodied, in part, in United States Trademark Registration Numbers 0,506,885, 0,753,791, 0,890,992, and 1,557,017 (the "Smucker's Mark").  True and correct copies of these Registrations are attached hereto as Exhibit A and are incorporated herein by reference.

16. Additionally, since at least has early as 1955, Smucker has consistently packaged its jams, jellies, and preserves in a proprietary and distinctive crock jar.  The crock jar is wide around the bottom two-thirds portion of the jar, with the upper one-third portion of the jar tapering inward toward the jar opening, as depicted below:

4



Smucker's rights in the crock jar design are embodied, in part, in United States Trademark Registration Number 1,409,640 (the "Crock Jar Mark").  A true and correct copy of this Registration is attached hereto as Exhibit B and is incorporated herein by reference.

17.     Starting at least as early as 1975, Smucker began selling its same jams, jellies, and preserves under both the Smucker's Mark and the Crock Jar Mark, along with the gingham lid design depicted below:



Smucker's rights to the gingham lid design are embodied, in part, in United States Trademark Registration Number 1,149,068 (the "Gingham Mark").  A true and correct copy of this Registration is attached hereto as Exhibit C and is incorporated herein by reference.

18.     The Gingham Mark has been used in the United States by Smucker for decades in connection with the manufacture and sale of jams, jellies, and preserves and is synonymous with Smucker in the minds of consumers.  In addition to jams, jellies and preserves, Smucker uses the Gingham Mark with Smucker's® ice cream toppings, Smucker's® fruit syrups, Smucker's® natural peanut butter, Smucker's® Uncrustables® sandwiches, and Smucker's® Snack'n Waffles™ brand waffles.

5

19.     Since at least as early as 1975, Smucker has manufactured and sold a wide variety of its jams, jellies, and preserves under a unique, distinctive trade dress and non-functional package design consisting of the Smucker's Mark, the Crock Jar Mark, and the Gingham Mark (the "Smucker's Trade Dress").  Representative images of Smucker's use of the Smucker's Trade Dress are depicted below:

   

20.     Smucker has spent millions of dollars marketing and advertising jams, jellies, and preserves using the Smucker's Trade Dress to distinguish its products from those of its competitors.  True and correct copies of representative samples of those advertisements are attached hereto as Exhibit D and are incorporated herein by reference.

21.     As a direct result of Smucker's time and effort promoting the Smucker's Trade Dress and its consistent use of the Smucker's Trade Dress, Smucker's customers, its competitors, and the general public have come to associate the high quality jams, jellies, and preserves offered by Smucker with the Smucker's Trade Dress.  The Smucker's Trade Dress, and the elements that make up the Smucker's Trade Dress—including the Smucker's Mark, the Crock Jar Mark, and the Gingham Mark—are famous and have become very valuable assets of Smucker.

22.     Consistent with its overall basic beliefs and its commitment to providing consumers with high quality goods, in 2008 Smucker began manufacturing and selling a variety of fruit preserves in connection with the Smucker's Trade Dress and the additional trademark

ORCHARD'S FINEST ("Smucker's Orchard's Finest Preserves").  Smucker's rights in the

ORCHARD'S FINEST trademark are embodied, in part, in United States Trademark

Registration Number 3,734,847 (the "Orchard's Finest Mark").  A true and correct copy of this

Registration is attached hereto as Exhibit E and is incorporated herein by reference.

23.    Since 2008, Smucker has consistently used the Smucker's Trade Dress in

connection with the manufacture and sale of fruit preserves under the Orchard's Finest Mark.

Representative images of the Smucker's Orchard's Finest Preserves are depicted below:



(the "Smucker's Orchard's Finest Trade Dress").

## C.    The Agreement

24.    In 1984, S. A. Andros and Smucker, after extensive negotiation, entered into a

certain agreement dated February 16, 1984 whereby Smucker granted a royalty-free license to S.

A. Andros to use the Gingham Mark: (1) on jar and container lids of products, and other

materials, manufactured by Andros in Europe and sold by Andros in the United States and (2) on

jar and container lids of products, and other materials, manufactured by Andros and sold by

Andros in countries other than the United States (the "Agreement").  A true and correct copy of

that Agreement is attached hereto as Exhibit F and is incorporated herein by reference.

## D.    The Defendant

25.    Upon information and belief, Andros USA is a subsidiary of Andros Group,

which is located in France.

26.     Upon information and belief, Andros Group is a family-run private French company that currently owns and operates more than 25 factories worldwide.

27.     Upon information and belief, Andros Group is the successor in interest to S. A. Andros, a French corporation, and has licensed and or assigned rights originally granted to S. A. Andros to Andros Group's various subsidiaries and affiliates, including Andros USA.

28.     Upon information and belief, Andros USA distributes preserves and jellies in the United States under the trademark BONNE MAMAN (the "Bonne Maman Goods").

29.     Upon information and belief, the Bonne Maman Goods distributed by Andros USA in the United States are sold in a uniform trade dress consisting of: (1) a glass jar that tapers from the bottom of the jar outward to a larger opening at the top of the jar, (2) a lid incorporating a gingham design, and (3) a white label with black lettering bearing the mark BONNE MAMAN along with information related to the specific type of preserve or jelly contained in the jar, the weight of the product, and related nutritional information (the "Bonne Maman Trade Dress"). A representative sample of the Bonne Maman Trade Dress is depicted below:



30.     Andros USA's use of the Gingham Design in the Bonne Maman Trade Dress is permitted under the Agreement, as it is a sublicensee of the Agreement between Smucker and S. A. Andros.

**E.**      **Defendant's Recent Claims Against Smucker**

31.      On May 17, 2011, Andros USA, through counsel, sent a letter to Smucker alleging that certain aspects of the Smucker's Orchard's Finest Trade Dress were creating a likelihood of confusion with the Bonne Maman Goods and alleging that Smucker "created the Smucker Orchard's Finest Preserves with an intent to target the trade dress for the well-known Bonne Maman preserves."  Further, Andros USA accused Smucker of intentionally placing its Smucker Orchard's Finest Preserves goods immediately next to the Bonne Maman Goods on retail store shelves.  Counsel for Andros USA stated that if its claims against Smucker were not concluded "promptly and satisfactorily," it "would have little choice but to take steps necessary to protect its valuable intellectual property rights."  A true and correct copy of the Andros USA's May 17 letter is attached hereto as Exhibit G and is incorporated herein by reference.

32.      After receiving Andros USA's May 17 letter, Smucker, through outside counsel, conducted an investigation into the allegations contained in the letter and provided counsel for Andros USA with a formal, substantive response by letter dated June 10, 2011.  Based upon Smucker's internal investigation and the investigation of its counsel, Smucker advised Andros USA that, due to the distinct differences between the trade dress of each company's products, there was no likelihood of confusion between Smucker's Orchard's Finest Preserves and the Bonne Maman Goods, and that Smucker had not suggested that its products be placed alongside the Bonne Maman Goods on retail store shelves.  A true and correct copy of Smucker's June 10 letter is attached hereto as Exhibit H and incorporated herein by reference.

33.      In response to Smucker's June 10 letter, counsel for Andros USA responded on June 22, 2011 dismissing Smucker's investigation and conclusions as detailed in the June 10 letter and asserting that the facts and details contained in Smucker's letter "gives rise to the clear

inference that Smucker's has deliberately imitated the Bonne Maman trade dress."  Further, Andros USA asserted an additional claim of "contract compliance" against Smucker with regard to the Agreement between Smucker and S. A. Andros and stated that, although Andros USA "would prefer an amicable resolution . . . it will take the steps necessary to enforce its rights."  A true and correct copy of Andros USA's June 22 letter is attached hereto as Exhibit I and incorporated herein by reference.

34.     Counsel for Smucker promptly responded to the June 22 letter on July 1, 2011, again denying any likelihood of confusion between Smucker's Orchard's Finest Preserves and the Bonne Maman Goods and denying any intent by Smucker's to create an association with any protectable trade dress in the Bonne Maman Goods.  Further, counsel for Smucker invited counsel for Andros USA to forward any proposal for resolution of this matter to his attention for Smucker's consideration.  A true and correct copy of Smucker's July 1 letter is attached hereto as Exhibit J and incorporated herein by reference.

35.     On July 14, 2011, counsel for Andros USA responded to Smucker's counsel's July 1 letter, refusing to provide a proposal for resolution of this matter on the basis that such a proposal would be "premature."  Additionally, counsel for Andros USA wrote in the July 14 letter that:

> Andros believes that it is an appropriate time to consider changes to the Agreement, more than twenty-seven years after it was signed.  The parties have operated without much conflict since the Agreement was signed in 1984, but the worldwide commercial conditions have changed, and there have been some incidents.  Andros has already informed Smucker in 2008 that the Agreement has generally served the parties well, but suggested that they should reconsider aspects of the Agreement in light of the growth of globalized commerce and certain imprecision in the Agreement's wording.  In explaining Smucker's rejection of that idea, Ms. Harlan replied that the Agreement had been "carefully crafted . . . to withstand the test of time."
>
> This most recent issue further emphasizes for Andros the fact that the Agreement has not fully withstood the test of time and the rise of global commerce, and

should be updated to reflect the parties' current situations, including our clients' growth, and the reality of the global economy.  <u>Unless the parties address a number of issues in the Agreement, it is likely that the future of the [G]ingham [M]ark will be jeopardized.  **Mindful that litigation between the parties over the Orchard's Finest breach** could jeopardize the future of the Agreement and the parties' joint exclusive use of the [G]ingham [M]ark, we await your prompt reply.</u>

(Emphasis added).  A true and correct copy of Andros USA's July 14 letter is attached hereto as Exhibit K and incorporated herein by reference.

## COUNT I
## <u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT</u>

36.    Smucker incorporates each and every allegation of Paragraphs 1-35 of this Complaint as though fully set forth herein.

37.    Smucker's use of the Smucker's Orchard's Finest Trade Dress is consistent with its use of the Smucker's Trade Dress and is immediately recognized in the minds of consumers as symbolic of Smucker as the source of the goods sold under the Smucker's Orchard's Finest Trade Dress.

38.    Smucker's Orchard's Finest Preserves have proven to be a successful product line that has become quite popular among consumers.

39.    Smucker's use of the Smucker's Orchard's Finest Trade Dress is distinctive from the Bonne Maman Trade Dress in both overall appearance and in comparing the individual elements of each trade dress.

40.    As fully set forth above in Paragraphs 31-35, Andros USA, through counsel, has asserted claims against Smucker alleging deliberate and willful infringement of the Bonne Maman Trade Dress.

41.    As fully set forth above in Paragraphs 31-35, Smucker, through counsel, has denied Andros USA's claims of deliberate and willful infringement of the Bonne Maman Trade

Dress, has requested a proposal for an amicable resolution of this matter, and has requested notice of any instances of actual confusion.

42.     As fully set forth above in Paragraphs 31-35, Andros USA, through counsel, has refused to provide Smucker with any proposal for resolution of its infringement claims and has, instead, challenged the validity and "future" of Smucker's Gingham Mark.

43.     Upon information and belief, Andros USA, through counsel, has indicated that, unless Smucker agrees to the demand in its July 14 letter to renegotiate the Agreement, it will commence litigation against Smucker and potentially challenge the validity of Smucker's Gingham Mark.

44.     As a result of Andros USA's refusal to provide a proposal for resolution of its infringement claims against Smucker, and the repeated statement that Andros USA would "take the necessary steps to enforce its rights," Smucker has been placed in apprehension of litigation as it continues to manufacture and distribute Smucker's Orchard's Finest Preserves.

45.     Upon information and belief, several purported elements of the Bonne Maman Trade Dress are unprotectable as they fail to function as a trademark or an indicator of source.

46.     Smucker's use of the Smucker's Orchard's Finest Trade Dress for preserves, or similar goods, is not likely to cause confusion or mistake among consumers as to the source or origin of the goods sold by Andros USA or the sponsorship or endorsement of those goods by Smucker.

## DECLARATORY JUDGMENT AS TO VALIDITY OF THE 1984 AGREEMENT BETWEEN SMUCKER AND S. A. ANDROS

47.     Smucker incorporates each and every allegation of Paragraphs 1-46 of this Complaint as though fully set forth herein.

48.     The Gingham Mark has been used by Smucker in commerce since at least as early as 1975.  Due to Smucker's consistent use of the mark in commerce and promotion of the Gingham Mark in the minds of consumers as indicating Smucker as the source of the products sold by it under the mark, it represents extreme goodwill of enormous value belonging exclusively to Smucker.

49.     Smucker, within the Agreement, grants S. A. Andros a royalty-free license to use the Gingham Mark both in the United States and elsewhere under certain conditions.

50.     The Agreement between Smucker and S. A. Andros is a valid and enforceable contract.

51.     The Agreement between Smucker and S. A. Andros is not vague or uncertain as to its terms or scope.

52.     Smucker has not breached or violated the Agreement in any manner.

53.     As set forth fully above in Paragraph 35, Andros USA has alleged that Smucker has breached and/or violated the terms of the Agreement.

54.     Upon information and belief, Andros USA, through counsel, has implied that unless Smucker agrees to the demand in its July 14 letter to renegotiate the Agreement, it will commence litigation against Smucker to challenge the validity and enforceability of the valuable Gingham Mark.

55.     As a result of Andros USA's statement and threats of litigation in three separate letters, Smucker has been placed in a reasonable apprehension of suit as it continues to manufacture and sell the many products it markets and sells in connection with its Gingham Mark.

## PRAYER FOR RELIEF

WHEREFORE, Smucker prays that this Court enter an Order:

A.      Declaring that Smucker's use of the Smucker's Orchard's Finest Trade Dress is not likely to be confused with Defendant's Bonne Maman Trade Dress;

B.      Declaring that Smucker's use of the Smucker's Orchard's Finest Trade Dress does not infringe any rights of Defendant;

C.      Declaring that the Agreement dated February 16, 1984 between Smucker and S. A. Andros is valid and enforceable;

D.      Declaring that Smucker has not violated the Agreement dated February 16, 1984 between Smucker and S. A. Andros; and

E.      Granting Smucker any further relief that the Court deems to be just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues triable thereby.


Dated: July 26, 2011                              Respectfully submitted,

                                                  s/ *Angela R. Gott*
                                                  Timothy P. Fraelich  (Ohio Bar No. 0062468)
                                                  tfraelich@jonesday.com
                                                  Angela R. Gott  (Ohio Bar No. 0082198)
*Of Counsel*:                                     agott@jonesday.com
                                                  JONES DAY
Ashley H. Zito                                    North Point
azito@jonesday.com                                901 Lakeside Avenue
JONES DAY                                         Cleveland, Ohio  44114-1190
1420 Peachtree Street, N.E.                       Telephone:     (216) 586-3939
Suite 800                                         Facsimile:     (216) 579-0212
Atlanta, Georgia  30309-3053
Telephone:     (404) 581-8587
Facsimile:     (404) 581-8330

                                                  *Attorneys for Plaintiff*
                                                  *The J.M. Smucker Company*

14